FILED
CHARLOTTE, NC
JUN 1 6 2023
US DISTRICT COURT
WESTERN DISTRICT OF NC

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
DISTRICT COURT DIVISION

FILE NO. 3:23-cv-361-FDW

| | |
|---|---|
| LEEGRACIEA LEWIS<br><br>Plaintiff,<br><br>v.<br><br>MILLER VALENTINE GROUP, STEELE CREEK APARTMENTS LIMITED PARTNERSHIP, SOUTHWOOD REALTY COMPANY PROPERTY MANAGER, LANDINGS AT STEELE CREEK APARTMENTS<br><br>Defendants. | COMPLAINT AND DEMAND FOR JURY TRIAL |

1. PLAINTIFF, proceeding *pro se*, brings this complaint against DEFENDANTS and alleges as follows:

**STATEMENT OF JURISDICTION**

2. Jurisdiction and venue in this Court is proper per N.C.G.S 1-82 and 7A-243 because the acts alleged occurred in this county, the Subject property is located in this county, the Defendants do business in this county and the damages claimed are within the jurisdictional limits of this court.

**COMPLAINT**, page 1 of 9

## PARTIES

3. Plaintiff is an individual and a resident of Mecklenburg County. In 2002, Plaintiff was diagnosed with viral encephalitis which caused brain injuries and resulted in disabilities such as various cognitive deficits/impairment, anxiety, walking, motor deficits and limited speech impediments. Plaintiff is able to live independently and take care of all daily needs.

4. Defendants are companies doing business in North Carolina including Mecklenburg County, North Carolina.

## FACTS ALLEGED

1. On October 5, 2020, Plaintiff gave a copy of the CDC Declaration Moratorium form to Southwood Property Management representative, Chilli. Plaintiff went to the courthouse to get this to prove that her eviction was unlawful.

2. On September 30, 2020, Defendants had Plaintiff wrongfully evicted from her apartment during the Covid 19 Pandemic.

3. Plaintiff was in bed when Sheriff Kimberly Williams and sheriff deputies cut the front door locks, entered Plaintiff's apartment, and proceeded to the bedroom while plaintiff was still in bed. She was ordered to leave.

4. Plaintiff presented the order from the court that was issued by the CDC to Sheriff Williams. The CDC order covered September 4, 2020, through December 31, 2020, to prohibit the removal of tenants from their residences during this period.

5. Sheriff Williams stated that Judge Hand's order must be followed to evict her.

6. On August 24, 2020, Plaintiff had a scheduled court date. Plaintiff requested a continuance because she had been in the hospital due to a fall in her bathroom.

7. On August 18, 2020, Plaintiff fell in her bathroom and was taken to the emergency room by ambulance. Plaintiff was admitted to the hospital due to injuries from the fall.

**COMPLAINT**, page 2 of 9

Case 3:23-cv-00361-FDW-DCK    Document 1    Filed 06/16/23    Page 2 of 9

8. Plaintiff's apartment, including the bathroom, was not equipped as handicap accessible even though Plaintiff had made requests over the years.

9. On August 11, 2020, Fair Housing of Charlotte requested that Defendants make reasonable modifications to Plaintiff's apartment.

10. Teresa Brooks of Fair Housing of Charlotte informed Plaintiff by Defendant's attorney that no corrections for the apartment's handicap situation would be made until Plaintiff was out of the apartment.

11. On November 5, 2019 cashier's check in the amount of $850.00 representing Plaintiff's rent was refused by Irene Scott. They continued to refuse Plaintiff's cashier's checks until evicted.

12. Plaintiff was told by Irene Scott that Defendants had informed the office staff to no longer accept any cashier's checks from Plaintiff.

13. Plaintiff [at various times] would be accompanied by Tonya Hamilton, Rachel Weber of Community Partnerships of Charlotte, and Rene Johnson a City Council member of Mecklenburg County, when trying to pay her rent. They witnessed the refusal of the cashier's checks.

14. Rene Johnson typed a letter on Plaintiff's behalf requesting Defendants to take Plaintiff's cashier's rent checks. Plaintiff's cashier's checks continued to be refused by Irene Scott.

15. Mary Quinn and Lindy Howell of Skyla Credit Union supported and aided Plaintiff each month with reminders to purchase the cashier's checks for the rent so Plaintiff would take them on time to the Landings at Steele Creek Rental office. All cashier's checks were refused. Attorney Hannah R. Guerrier, Esq. made copies of all the cashier's checks for her records.

16. On January 19, 2019, Environmental Testing Group/MIT did a basic mold inspection and advanced mold test. Southeast Environmental Microbiology Laboratories checked all the data for thoroughness and accuracy.

17. On or around December 8, 2016, Plaintiff was notified by the maintenance staff workers that they would enter her apartment to treat and remediate moisture damage in her apartment.

18. Plaintiff was notified of mold found growing in her apartment.

## CLAIMS FOR RELIEF

### COUNT 1:
### WRONGFUL EVICTION

19. Plaintiff re-alleges and incorporates all prior allegations in this Complaint as if fully set forth here.

20. On September 30, 2020, Defendants had Plaintiff evicted from her apartment during the Covid-19 Pandemic.

21. Plaintiff did not receive any notification prior to September 30, 2020, allowing her to make arrangements for her personal belongings. She lost everything and had nowhere to go.

22. Plaintiff was told to leave the property immediately. Chilli of Southwood Realty Company Property Management informed Plaintiff that she had five days to retrieve her belongings.

**COMPLAINT**, page 4 of 9

23. When Plaintiff returned to get her possessions, there were numerous people entering and leaving her apartment and taking her belongings. Included in (but not limited to) Plaintiff's possessions was furniture, electronics, jewelry, family heirlooms, clothing, and all her personal and confidential records, which cannot be replaced. Also, everything pertaining to Plaintiff's case.

24. Plaintiff had the understanding that her items would be kept safe, secured or stored until she returned to get them within five days. This was not done.

25. Plaintiff was told by Legal Aid Attorney Hannah R. Guerrier, Esq., to get rid of and destroy all pictures and testing results and all information pertaining to Plaintiff's case which included all her correspondence, notifications, copies of cashier's checks, mold testing results, and any paperwork received from Miller Valentine Group Attorney's. Attorney Guerrier further told Plaintiff that she would be giving Plaintiff's information that was in her possession to the Miller Valentine Group attorneys so that together they could destroy all the information they both had. This would include whatever was also in the possession of Attorney Andrew G. Pinto.

26. On September 4, 2020, through December 31, 2020, the CDC issued its order to prevent severe harm to tenants evicted during a global health pandemic and to curb the ongoing spread of COVID-19 in the general population. The CDC order prohibits the removal of tenants from their residences during its effective period so long as tenants submit a declaration of their eligibility under penalty of perjury ("Declaration") to the landlord, which Plaintiff gave a copy to Chilli, the person in charge for Southwood Realty Company Property Management..

27. Plaintiff lost her excellent credit rating, and no one would rent to her because of this.

**COMPLAINT**, page 5 of 9

Case 3:23-cv-00361-FDW-DCK    Document 1    Filed 06/16/23    Page 5 of 9

28. Attorney Andrew Pinto, representative for Miller Valentine Group, informed legal aid Attorney, Hannah R. Guerrier, Esq to have Plaintiff use the cashier's rent checks Plaintiff was holding on to and pay for a hotel or a place to stay.

29. Attorney Andrew Pinto stated to Judge Hand at August, 2020 virtual court appearance that Plaintiff refused to pay her rent.

30. Plaintiff's mother made two trips against her doctor's orders because Plaintiff suddenly became homeless due to the wrongful eviction. Plaintiff's mother flew from Phoenix, Arizona to Charlotte, North Carolina, in November, 2021 to aid the Plaintiff, her daughter. Plaintiff's mother's second trip was December 21, 2021. Soon after returning home to Arizona, Plaintiff's mother passed away on January 16, 2022. She was concerned about her daughter, the Plaintiff, even though she had health challenges which resulted in her death.

31. Plaintiff's mother passed away because of disobeying her doctor's order not to fly due to her serious health condition. She made those two trips from Phoenix, Arizona to Charlotte, North Carolina to help secure an apartment for the Plaintiff. Because of this, Plaintiff's mother passed away soon after her second trip to Charlotte, North Carolina.

32. Plaintiff has been deprived of her rights and has also suffered monetary damages in an amount to be proven at trial, humiliation, mental anguish, and emotional distress. Plaintiff continues to suffer severe and/or extreme emotional distress as a result of the Defendants's extreme and outrageous conduct, as described above.

33. Defendant's actions have caused Plaintiff damages in the amount of $500,000 [or] that is within the jurisdictional limits of this court.

## COUNT 2:

COMPLAINT, page 6 of 9

Case 3:23-cv-00361-FDW-DCK   Document 1   Filed 06/16/23   Page 6 of 9

## DUE PROCESS OF LAW

34. Plaintiff re-alleges and incorporates all prior allegations in this Complaint as if fully set forth here.

35. Plaintiff requested to appeal the judge's decision and it was denied.

36. Plaintiff had a scheduled court date on August 24, 2020.

37. Plaintiff requested a continuance because of an injury after falling in an ill-equipped bathroom that was not suitable for Plaintiff who is handicapped.

38. Plaintiff was denied continuance by residing Judge Hand.

39. Judge Hand also denied the Plaintiff's right to appeal her decision.

40. Plaintiff went to Mecklenburg County Court to get a copy of her record and discovered in the court records that another hearing took place on September 2, 2020.

41. Plaintiff received no notice from Defendant's attorney Andrew G. Pinto, or the Clerk of the Court of the September 2, 2020 hearing.

42. Plaintiff received no notice of eviction that was scheduled for September 30, 2020, during the Covid-19 Pandemic, even though it was ordered by the CDC and the Federal Government for no evictions until December 31, 2020.

43. Plaintiff's civil rights have been deprived without due process of the law.

44. Supremacy Clause and rights guaranteed by the United States Constitution, including the Due Process Clause of the Fourteenth Amendment, and rights under the North Carolina Constitution.

## COUNT 3:

**COMPLAINT**, page 7 of 9

Case 3:23-cv-00361-FDW-DCK     Document 1     Filed 06/16/23     Page 7 of 9

# RETALIATORY EVICTION

45. Plaintiff contacted the City of Charlotte Code Enforcement regarding the mold problem in her apartment.

46. Alex Gregory, Code Enforcement Inspector, did the inspection and the Defendants were ordered to repair, alter or improve the property.

47. Defendant's failure to address the mold problem in a timely manner has resulted in Plaintiff's respiratory issues and sickness.

48. Plaintiff moved into Defendants' property (Landings at Steele Creek) on or around April 30, 2011. Plaintiff occupied a two-bedroom two bath apartment on the lower level.

49. In 2016, Plaintiff noticed a mildew and mold smell throughout the apartment.

50. Plaintiff complained to Ana Scott and Irene Scott on multiple occasions, but nothing was done to address the issue.

51. Plaintiff suffered from respiratory issues and various illnesses throughout the time she lived in the Defendant's property including common colds, coughing, sneezing, headaches, as well as a tendency to get constantly sick for longer periods of time. Plaintiff's medical conditions worsened over time.

52. On or around September 26, 2018, Plaintiff was diagnosed with asthma. Plaintiff had never before been diagnosed with asthma or suffered from asthma-related symptoms.

53. Plaintiff began experiencing respiratory issues and was prescribed an inhaler by her doctor to treat her symptoms.

    Plaintiff never experienced respiratory issues before moving into the Landings at Steel Creek Apartments.

54. Defendant's actions have caused Plaintiff damages in the diagnosed amount of $750,000.00 [or] that is within the jurisdictional limits of this court.

## PRAYER FOR RELIEF

55. WHEREFORE, Plaintiff requests the following relief:

A money award judgment entered against Defendant for Plaintiff's damages in the amount of $750,000.00 [or] that is within the jurisdictional limits of this court.

An award of post-judgment interest on any money damages awarded at the current statutory rate.

Plaintiff's reasonable costs and disbursements for bringing this action.

Any and all other relief the Court deems just and reasonable under the circumstances.

Respectfully submitted on: June 12, 2023

By: _____
Leegraciea Ann Lewis